IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERRY JOHNSON,

     Plaintiff,

vs.                                                 Civ. No.  07-58 JP/LFG

BOARD OF CURRY COUNTY
COMMISSIONERS, LUCY DeLUNA,
JUNE JORGESON, and RICHARD SMITH,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On June 26, 2007, Defendant June Jorgeson[1] filed Defendant Jorgenson's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 25).  This motion to dismiss specifically addresses Plaintiff's remaining claims against Defendant Jorgenson as raised in Counts I and II of the First Amended Complaint for Damages (Doc. No. 21) (First Amended Complaint), filed June 12, 2007.[2]  Having reviewed the briefs and relevant law, the Court concludes that Defendant Jorgenson's motion to dismiss should be granted and that Counts I and II of the First Amended Complaint should be dismissed with prejudice as to Defendant Jorgenson in her individual and official capacities.

---

[1]The correct spelling of Defendant Jorgeson's name apparently is "Jorgenson." Consequently, the Court adopts Defendant Jorgenson's spelling of her name.

[2]On August 21, 2007, the Court granted the individual Defendants' Unopposed Motion to Dismiss Defendants from Counts III, IV, and V of the First Amended Complaint (Doc. No. 49). Stipulated Order Dismissing Individuals from Counts III, IV, & V of the First Amended Complaint (Doc. No. 50).  As a result of the August 21, 2007 dismissals, the only remaining Counts against Defendant Jorgenson and the other individual Defendants are Counts I and II. Furthermore, Defendant Board of Curry County Commissioners (Board) is now the sole Defendant with respect to Counts III, IV, and V.

A.  Background

    This is an employment discrimination and retaliation case.  Plaintiff is an African-American who was employed at the Curry County Juvenile Detention Center for eight years as a detention officer before resigning from his employment.  Plaintiff brings this lawsuit against the Board and the individual Defendants in both their official and individual capacities.

    Plaintiff alleges that on June 6, 2005 Defendant Lucy DeLuna became head administrator of the Curry County Juvenile Detention Center.  Plaintiff then alleges that on July 9, 2005 Defendant Jorgenson, a detention officer, made disparaging remarks about African-Americans.[3] According to Plaintiff, he complained about the offensive language on August 1, 2005 and stated to Defendant DeLuna that he had contacted the Equal Employment Opportunity Office about the use of that kind of language in the workplace.  Plaintiff contends that sometime during September 2005 Defendant DeLuna posted a memo on the bulletin board at the Curry County Juvenile Detention Center which stated that Plaintiff was under investigation and would, therefore, be placed on the day shift while the investigation was pending.

    Plaintiff further asserts that he complained to Defendant Smith, the Curry County Manager, about the racial bias and discriminatory policies at the Curry County Juvenile Detention Center.  Plaintiff alleges that he told Defendant Smith he was going to file an Equal Employment Opportunity Commission complaint and that, thereafter, Defendant Smith placed Plaintiff on administrative leave for three days.

---

[3]Plaintiff alleges that Defendant Jorgenson stated "that 'my brother-in-law is a straight up nigger' and when an African American guard protested she stated: 'my brother-in-law is a nigger, and a nigger is a nigger.'" First Amended Complaint at ¶11.

Plaintiff also alleges that on October 13, 2005 he learned that both Defendants DeLuna and Jorgenson had been trying to bribe juvenile detainee, Orlando Salas, with extra privileges if Salas would file a false grievance against the Plaintiff accusing him of improper sexual conduct with a female juvenile detainee.  According to Plaintiff, Salas verified that these actions had occurred.  Plaintiff claims that although he complained to Assistant County Manager Lance Pyle about these bribery attempts, Defendant DeLuna continued in her employment.  Plaintiff subsequently resigned from his employment allegedly as a result of the emotional stress brought about by the Defendants' actions.

Plaintiff brings five Counts in his First Amended Complaint for Damages.  Count I is a racial discrimination and retaliation claim brought under 42 U.S.C. §1981 against all Defendants.  Count II is a Fourteenth Amendment equal protection claim brought under 42 U.S.C. §1983 against all Defendants.  Count III is a Title VII racial discrimination claim against the Board.  Count IV is a Title VII retaliation claim against the Board.  Finally, Count V is a racial discrimination and retaliation claim brought under the New Mexico Human Rights Act against the Board.

Defendant Jorgenson brings her motion to dismiss under Fed. R. Civ. P. 12(b)(6). Defendant Jorgenson argues that the Court should dismiss with prejudice Counts I and II as to her because she is entitled to qualified immunity on those Counts.  The Court notes that the defense of qualified immunity applies only to defendants sued in their individual capacities.  *See Kirkland v. St. Vrain Valley School Dist. No. Re-1J*, 464 F.3d 1182, 1187 n.2 (10th Cir. 2006)(citations omitted).

B.  Discussion

    1.  Rule 12(b)(6) Standard of Review

The United States Supreme Court recently revisited the traditional Rule 12(b)(6) standard

of review in *Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955 (2007) and *Erickson*

*v. Padrus*, ___ U.S. ___, 127 S.Ct. 2197 (2007).  In response to *Bell Atlantic* and *Erickson*, the

Tenth Circuit has articulated a somewhat modified standard of review reflecting the holdings in

those two cases:

> In the Rule 12(b)(6) context, "[w]e look for plausibility in th[e] complaint." *Alvarado v.*
> *KOB-TV, L.L.C.*, No. 06-2001, 493 F.3d 1210, 1215 (10th Cir.2007). In particular, we
> "look to the specific allegations in the complaint to determine whether they plausibly
> support a legal claim for relief." Id. at 1215 n. 2. Rather than adjudging whether a claim
> is "improbable," "[f]actual allegations [in a complaint] must be enough to raise a right to
> relief above the speculative level." *Bell Atl. Corp.*, ---U.S. ----, 127 S.Ct. 1955, 1965, 167
> L.Ed.2d 929 (2007).

*Kay v. Bemis*, --- F.3d ----, 2007 WL 2694053 (10th  Cir.).  The Courts, however, continue to

accept "all well-pleaded allegations as true and view[] them in the light most favorable to [the

plaintiff]."  *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006)(citation omitted).

    2.  Qualified Immunity and Plaintiff's Individual Capacity Lawsuit Against Defendant
    Jorgenson

When a defendant raises qualified immunity in a Rule 12(b)(6) motion to dismiss, "the

plaintiff must carry the burden of establishing that the defendant violated clearly established

law." *Lybrook v. Members of Farmington Mun. Schools Bd. of Educ.*, 232 F.3d 1334, 1337

(10th Cir. 2000)(citing *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir.1997)).  In making

this qualified immunity analysis

> a court must first determine whether the plaintiff has alleged a violation of federal law.
> *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir.2004). If the answer is "yes," then the
> court must decide whether the right was clearly established when the alleged violation
> occurred.  *Id.; see also Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir.2003). To be

> clearly established, "[t]he contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing violates that right." *Albright v.*
> *Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.1995) (quoting *Anderson v. Creighton*, 483 U.S.
> 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Although the very conduct in question
> need not have been held unlawful, "in the light of pre-existing law the unlawfulness must
> be apparent." *Id*. If a plaintiff fails to demonstrate that a defendant's conduct violated the
> law, then we need not reach the additional question of whether the law was clearly
> established. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th
> Cir.2003).

*Marino v. Mayger*, 118 Fed. Appx. 393, 398 (10th Cir. 2004)(footnote omitted).

Defendant Jorgenson argues that she is entitled to qualified immunity with respect to

Counts I and II because

> Defendant Jorgenson is not the Plaintiff's supervisor and had no control or authority over
> him.  Further, it is difficult to ascertain how the Plaintiff's rights were allegedly violated
> when Defendant Jorgenson purportedly engaged in an inappropriate conversation, where
> the Plaintiff was not present.  It is also difficult to ascertain how the Plaintiff's rights
> were allegedly violated when Defendant Jorgenson purportedly unsuccessfully attempted
> to coerce an inmate to file a false grievance against the Plaintiff.  However, even
> assuming that the Plaintiff could establish that Defendant Jorgenson's alleged [sic]
> violated his rights, which is denied, the Plaintiff cannot demonstrate that Defendant
> Jorgenson's purported activity violated any clearly established law.

Defendant Jorgenson's Motion to Dismiss Plaintiff's First Amended Complaint at 3.

> a. Count I, the §1981 Claim

A liberal construction of the First Amended Complaint indicates that Count I consists of

two different allegations against Defendant Jorgenson.  First, Plaintiff alleges that Defendant

Jorgenson racially discriminated against Plaintiff by, on one occasion,  making highly offensive

racial remarks to another guard, but not in Plaintiff's presence.   Second, Plaintiff alleges that

Defendant Jorgenson retaliated against Plaintiff for his complaint about her racial remarks by

attempting to have Salas write a false grievance against Plaintiff.

In deciding the issue of qualified immunity in the §1981 context, the plaintiff must first

allege a violation of §1981.  Section 1981 protects the ability of African Americans to enjoy "all

benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b).

Although the Plaintiff generally alleges in the First Amended Complaint that the Defendants'

conduct "altered the terms and conditions of his employment," this allegation is not plausibly

supported by the facts presented in the First Amended Complaint with respect to Defendant

Jorgenson. *See* First Amended Complaint at ¶24. It is clear that Defendant Jorgenson was

Plaintiff's co-worker and not his supervisor. Defendant Jorgenson, therefore, lacked the

authority to alter the terms or conditions of Plaintiff's employment contract. *See Stewart v.

Board of Com'rs for Shawnee County, Kansas*, 216 F.Supp.2d 1265, 1278 (D. Kan. 2002). In

fact, there are no allegations which plausibly support the contention that Defendant Jorgenson's

alleged racial comments or failed attempts to have Salas falsify a grievance actually altered the

terms or conditions of Plaintiff's employment contract. For instance, Plaintiff does not allege

that Defendant Jorgenson somehow prevented Plaintiff from performing his job duties or that

Defendant Jorgenson interfered with Plaintiff being paid for performing those duties.

Furthermore, although Plaintiff alleges that Defendant Jorgenson's actions caused him emotional

stress which resulted in his resignation, Plaintiff does not allege that the employment contract

provided for a work environment free of emotional stress. *See Silva v. Albuquerque Assembly &

Distribution Freeport Warehouse Corp.*, 106 N.M. 19, 738 P.2d 513 (1987)("damages for

emotional distress are not recoverable in an action for breach of an employment contract,

whether express or implied, in the absence of a showing that the parties contemplated such

damages at the time the contract was made.").

Also, in order to show that Defendant Jorgenson's alleged racial comments and attempts

to obtain false grievances from Salas constituted either racial discrimination or unlawful

retaliation under §1981, the Plaintiff must allege that Defendant Jorgenson's actions resulted in

an adverse employment action.  *See Cooper v. American Airlines, Inc.*, 213 Fed. Appx. 714, 716-17 (10th Cir.), cert. denied, 127 S.Ct. 2938 (2007)(adverse employment action is part of *prima facie* case of inferred racial discrimination under §1981);  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006)((plaintiff must show "an adverse action that a reasonable employee would have found material" in order show a *prima facie* case of retaliation under §1981).  Although an adverse employment action usually consists of actions like a reprimand or termination, Plaintiff argues that the adverse employment action in this case was his resignation which Plaintiff characterizes as a constructive discharge.   The Tenth Circuit explained the concept of constructive discharge in *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1135-36 (10th Cir. 2004)(citations omitted) as follows:

> A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign. Working conditions must be so severe that the plaintiff simply had no choice but to quit.  In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged.

> The question is not whether working conditions at the facility were difficult or unpleasant. Rather, Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship. We have previously held that even requiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary. We judge the voluntariness of an employee's resignation under an objective standard, looking to whether his or her working conditions were so intolerable that a reasonable employee would have had no other choice but to quit.

The Tenth Circuit in *Exum* also noted that if a plaintiff subjectively feels that the work place is stressful, that in itself "is not an objective criterion used to determine if a reasonable employee would have been compelled to resign." *Id*. at 1136 n.7.

In this case, Plaintiff has merely alleged that he resigned due to emotional stress.  Under *Exum*, a stressful work place alone does not provide a basis for a constructive discharge.

Additionally, Plaintiff has not alleged facts which indicate that work conditions were so severe as to compel a reasonable person to resign.  To show racial harassment, a plaintiff must point to "more than a few isolated incidents of racial enmity."  *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987)(citation omitted).  Here, when Defendant Jorgenson made the alleged racial comments she did so only on one occasion; she did not make those comments in Plaintiff's presence; and she did not direct the comments toward Plaintiff.  Defendant Jorgenson's alleged racial comments were not so severe or pervasive as to constitute racial harassment.  Furthermore, the alleged attempts to bribe Salas were ultimately unsuccessful and so did not directly harm Plaintiff's ability to work.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(to determine whether harassment is severe and pervasive the court should consider, among other things, whether the conduct unreasonably interferes with work performance).  In sum, the Court concludes that Plaintiff has failed to state a plausible §1981 claim against Defendant Jorgenson based either on her alleged racial comments or for her alleged failed attempts to bribe Salas to file a false grievance.  Defendant Jorgenson is entitled to qualified immunity as to Count I, which will be dismissed with prejudice as to Defendant Jorgenson in her individual capacity.

> b. Count II, Equal Protection Claim Under §1983

To state a §1983 claim, the Plaintiff must allege that Defendant Jorgenson was acting under color of state law when she allegedly violated Plaintiff's constitutional right to equal protection.  To establish the necessary state action to support a §1983 claim, Defendant Jorgenson must have been Plaintiff's supervisor or she must have exercised state authority over Plaintiff.  *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994)(citing *Woodward v. City of Worland*, 977 F.2d 1392, 1400-01 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993)).  As

already noted, Plaintiff does not allege that Defendant Jorgenson was Plaintiff's supervisor.
Furthermore, Plaintiff does not allege that Defendant Jorgenson exercised state authority over
Plaintiff.  Since Plaintiff failed to allege that Defendant Jorgenson engaged in state action with
regard to her conduct toward him, Plaintiff has not stated a plausible §1983 claim against
Defendant Jorgenson.  Hence, Defendant Jorgenson is entitled to qualified immunity as to Count
II which also will be dismissed with prejudice as to Defendant Jorgenson in her individual
capacity.

    3.  Plaintiff's Official Capacity Lawsuit Against Defendant Jorgenson

    The Court *sua sponte* considers whether the §1981 and §1983 claims against Defendant
Jorgenson in her official capacity should likewise be dismissed.[4]  Suing an individual defendant
in an official capacity is the same as suing the governmental entity which the individual
defendant serves.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71(1989)("a suit against a
state official in his or her official capacity is not a suit against the official but rather is a suit
against the official's office. ... As such, it is no different from a suit against the State
itself.")(citation omitted). Consequently, the §1981 and §1983 claims against Defendant
Jorgeson are redundant of the §1981 and §1983 claims brought against the Board.  Moreover, the
United States Supreme Court has held that neither states nor state officers sued in their official
capacities are "persons" within the meaning of §1983.  *Id.*  For these reasons, the Plaintiff cannot
sue Defendant Jorgenson in her official capacity under §§1981 and 1983.  Plaintiff's official

---

[4]A district court may *sua sponte* dismiss a plaintiff's claim under Fed. R. Civ. P. 12(b)(6)
if "'it is "patently obvious" that the plaintiff could not prevail on the facts alleged, and allowing
him an opportunity to amend his complaint would be futile.'"  *Smith v. New Mexico*, 94 Fed.
Appx. 780, 781 (10th Cir.), *cert. denied*, 125 S.Ct. 360 (2004)(quoting *Hall v. Bellmon*, 935 F.2d
1106, 1109 (10th Cir. 1991)).

capacity claims against Defendant Jorgeson will, therefore, be dismissed with prejudice.

IT IS ORDERED that:

1.  Defendant Jorgenson's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 25) is granted; and

2.  Counts I and II of the First Amended Complaint will be dismissed with prejudice as they pertain to Defendant Jorgenson in both her individual and official capacities.

_____
SENIOR UNITED STATES DISTRICT JUDGE

10